Good morning, everyone. The first case on the call this morning is agenda number 13, docket number 122203, Oswald v. Kramer. Are you prepared to start? You may do so. Kenneth Flaxman Good morning, Your Honors. May it please the Court, my name is Kenneth Flaxman and I represent the plaintiff appellant Constance Oswald. Ms. Oswald is a Cook County real property taxpayer. Oswald challenges the facial constitutionality of Section 1586 of the Property Tax Code. The text of 1586C requires issuance of a property tax exemption to hospital applicants if the value of certain services provided equals or exceeds the hospital's estimated property tax liability. There is no other requirement in the text of 1586 for issuing an exemption. That's a constitutional problem and it's a problem because Article 9, Section 6 of the 1970 Illinois Constitution requires property to be used exclusively for charitable purposes. The test for satisfying the exclusivity is a very fact-intensive test. That was a comment the Court made in Provena. And there are six or seven relevant factors which we described in the brief as the Korsen factors and they arise from this Court's decision in Methodist Old People's Homes v. Korsen. The way that Section 1586 was written violates the Constitution because it processes exemptions without ever considering the constitutional exclusive use test. So this is a facial challenge, Counsel? It is, Your Honor. And didn't you indicate that you believe that there are circumstances in which the statute can be constitutionally applied? I, below, I agreed that there could be hypothetical circumstances, but I qualified it by saying it's really a fantasy. And it's a little bit like saying the scientists and the physicists know that light can be bent by a black hole. And the way we measure time is by looking at light. So time travel is hypothetically possible. And my point is that hypothetical has to have some basis in fact. It can't be imaginary and pretend. Otherwise there's no point to applying it, any kind of hypothetical like that. Have I answered the Court's question? Sure. So the defendants here came up with multiple construction aides that they argue avoids Section 1586's constitutional defect. But there's a core problem with each of those interpretation aides. And those aides would only apply if the statute was not clear on its face. The first step in interpreting the statute, of course, is to look at the text itself. And I like the language of this Court in the Illinois Graphics v. Nickham case, where they say it must be given effect without resort to other aides for construction. They also say it is never proper for a court to depart from the statute's plain language. Here, the text is extremely clear. The process is limited and it's mechanical under the statute. If the hospital submits an exemption and it satisfies Section 1586C's mathematical comparison test, then the exemption must be granted by the department. There's no permissive possibility. There's no discretionary possibility. It's absolute. And that process is unconstitutional because it ignores the exclusivity requirement and the testament, of course. In the trial court below, this case was decided on a summary judgment. The plaintiff introduced a form called P-Tax-300-H, which was used by hospital applicants and the department for collecting the information to make the decision about whether to issue an exemption or not. That form was undisputed and unrebutted in the record. That form only collected the Section 1586C data, not the data that would be required to perform the coarsen factors analysis. That form tends to prove that the department was reading, at least at that time, Section 1586 the same way that Ms. Oswald reads it. In the Carl argument that was previously before this court, the department seems to have conceded that point about the form and the data that was collected. And I think what they were asking for then was they wanted guidance from this court to settle the issue. One of the other arguments arising in the briefs is whether the word shall really mean shall and whether there's an interpretation aid that the court can adopt to take away the mandatory nature one would ordinarily give to the word shall. It can't. Shall is mandatory here. There's nothing in Section 1586 that vests any discretion or any permission in the department in regards to the hospital exemption. The way the statute is laid out textually and it's constructed, it's just extremely mechanical. And it's our view that all of the cases where shall is interpreted not to mean shall have in them at least some basis of discretion. And that basis of discretion is missing here. Mr. Flaxman, what's wrong with the department's argument that 1586 provides a broader definition of statutory charitable ownership? I don't think that removes the constitutional argument. The constitutional exclusivity test is separate. The legislature was free to add an ownership requirement, to modify an ownership requirement, but the legislature is not free to say we will issue an exemption if you're a hospital owner and you satisfy the math test. And in fact, using the fact that it is a hospital owner, I believe, is an unconstitutional criterion by itself if that's the only basis. If we read the statute to include the constitutional requirement that the property be used exclusively for charitable purposes, as the appellate court held, do you have any problems then with the statute? No, but I find it very challenging to get to that reading of this statute the way it's worked. And that's the line of cases starting with McKenzie and its progeny all the way to Chicago Bar Association. And the way I read those cases, the court examined the text of the statutes very clearly and in very, very specific detail. And what the court was able to do in each of those statutes was find a word which gave a signal that the legislature was only giving an illustration. It's a very creative argument. That argument is not available here because of the text of Section 1586. There's nothing in Section 1586 that resembles the use of the word. I think in McKenzie and its progeny, the actual word in the statute was included. And the word including is not in Section 1586. And there's nothing that resembles the word including that would signal the legislature was just giving an illustration. In fact, it's our view that the plain text of the statute says the opposite. Again, it's a very mechanical exercise. The only evidence that we have in the record is this P-Tax 300-H form. And it's conceded that the data collected in that form for the department to use to make its decision only collected the data required for 1586-C. I think that's a very strong piece of evidence proving that the department itself was reading the statute as mandatory and not illustrative. Does that answer the court's question? The plaintiff appellant also disagrees with the use of the no set of circumstances test here. We think it's problematic. And the first problem is any interpretation given to 1586 has to be reasonable. That's a rule of law that comes out of this court's Eden retirement case. And we think it's not a reasonable interpretation to apply the no set of circumstances test. If you interpret Section 1586 reasonably, based on its text and construction, its actual words, the statute would satisfy the no set of circumstances test. And here's why. Section 1586 is not valid under any circumstances because in every single instance it provides for exemptions that are not based on any consideration of the constitutionally mandated exclusive charitable use requirement. I know that the 4th District's opinion is not law, but in reading the 4th District's opinion, I thought that their analysis of the no set of circumstances test was very persuasive. They acknowledged that the test is a little challenging, it's problematic, and then they went on to attempt to apply it. And they first noted, and we agree, and it is our argument as well, that you cannot use the fact that a hospital applicant is applying as the basis to issue the exemption. That's unconstitutional. You're using an unconstitutional criteria. And the 4th District also focused on the validly applied aspect of the test and concluded that it can never be validly applied because it is using an unconstitutional criteria. And so we agree with that argument and we think that argument is also bolstered because, again, the plain text of 1586C and the way the statute is written and mechanically operates, the department is forbidden from ever looking at the cores and factors and thus it's forbidden from ever considering the exclusivity test. And we think that defect is fatal and we think it's a facial fatal defect. That's my opening presentation unless the court has any additional questions. Seeing none, thank you. Mr. Elicio and Mr. Baum have agreed to divide your time. The clerk will provide you with a two minute warning. Thank you, Your Honor. I appreciate that. Good morning, Your Honors. I'm Illinois Assistant Attorney General Carl Elitz, appearing for the Department of Revenue. The question, of course, is whether Section 1586 of the Property Tax Code is facially unconstitutional. Now, Section 1586, Ms. Oswald argues, is unconstitutional because in Article 9, Section 6 of the Constitution, the requirement is that any exemption for property be exclusively used for charitable purposes. Now, this constitutional provision does not prevent the General Assembly from adding conditions or limitations on the exclusive use test. The General Assembly is simply forbidden from lowering the bar it can add to the requirements of the constitutional test. And, in fact, it did so in enacting Section 1565, which is the older version, which is at issue in this case, of the exemption. Section 1565 sets out various categories of owners who may seek an exemption and makes requirements for each of them. For example, there's requirements for old people's homes and requirements for historical societies. Those requirements add to the constitutional floor. They don't lower it. Those statutes all did include the constitutional language, however, correct? Beginning of Section 1565 does make reference to the constitutional requirements. So, yes, that's correct. But in enacting Section 1565, it was clear from case law, going back now from this Court, going back to 1907, that with regards to hospital applicants even, it is required for an applicant seeking an exemption to meet both the constitutional requirements for exclusive charitable use and whatever statutory requirements the General Assembly adds to that. Now, in Eden, this Court said that the context matters and that the fact that the General Assembly was working in the domain of this constitutional area, that its additional requirements for an exemption would be read on top of the constitutional floor. But the Court then went on and said, further, there's language in Section 1565 that backs this up. So Eden actually makes the two different arguments to reach the same place. Now, I agree with much of what you heard from Ms. Oswald's counsel about how the statute works, but I don't agree with the central tenet, which is that there's nothing in the language of Section 1565 to suggest that the General Assembly didn't have an improper intent in passing the legislation. This Court in Chicago Bar Association said that if the General Assembly intended to lower the constitutional limits, then the statute would be facially unconstitutional, and that's the hook that Mr. Flaxman is urging the Court to grab. But in Section 1586, the new statute, in the first part, A5, the General Assembly specifically said what its intent was with regard to the new provision. It was intended to create a new ownership category of charitable use exemptions. That category language is a reference back to the categories that 1565 provides. And it was not the intent of the General Assembly to declare any property ipso facto exempt, but rather to establish criteria to be applied on a case-by-case basis. Your Honors, this is where the General Assembly sets out its intent, and this language, with its reference to ipso facto, is a callback to decisions from this Court explaining that the exemptions cannot ipso facto be given statutorily unless the constitutional criteria are met. So the General Assembly in the statute, in the new statute, 1586, is acknowledging its constitutional obligation not to lower the floor. So, Liz, could you explain to me how this is supposed to work? We know that this new statute begins with statements about policy. It is essential to ensure the tax exemption law relating to hospitals accounts for the complexity of modern health care delivery systems. Health care is moving beyond the walls of the hospital. It goes on then to look at various factors, outreach programs, educational programs, goods and services provided to the community. And then requires that all of those factors, both in the hospital and outside into the community, be used to make this determination of, as you say, a new category of ownership. So your form apparently requires the hospital to provide the data that would appear to be necessary to meet this new category of ownership. Then how is it going to work when now we're going to talk about exclusive use of the parcel itself? Yes. The statute has provisions in it which don't have anything to do with the use of the parcel. So they don't go to the constitutional requirements at all. It's my contention, and I think it's backed up by the language of the statute, that what the General Assembly does is raise the bar. Not only does the hospital have to meet the constitutional requirements of exclusive charitable use, but the hospitals who make this particular application for an exemption have to show that they have done those outreach programs and in such numbers that allow the General Assembly to grant the exemption. That doesn't change. What I don't understand is these forms are going to say we've done all these things in the community. What evidence then would a hospital have to confer with to show that the parcel in question has been primarily or exclusively used for charitable purposes? Aren't those two very different ideas? No. They're cumulative requirements. The requirements of the statute are embodied in the Department's Form 300H. But there's also a constitutional requirement that the property be shown to be used exclusively for charitable purposes. Just a minute real quick. So they're just facts. The hospitals have to come in and say we do all this outreach, we do all this education, we provide goods and services. Okay, you're a charitable institution. Now, a different inquiry is, and on parcel pin number so-and-so, this is the kind of work we do here. Yes. And, in fact, the form is not particularly deep on the constitutional analysis, but it does ask for the applicant to state all the factors considered by the Board in reviewing the recommended approval. It has to be the constitutional analysis shown in the application. If a local government denies an exemption because it doesn't meet this Court's requirements for exclusive charitable use, then I would suggest the Department should, in that case, agree that the exemption should not be given. Because the only way to read this statute, and the way that's consistent with Section A5 of the Act, is to require that the statutory requirements be in addition to the historical exclusive use requirements. So we disagree. I disagree with Mr. Oswald's counsel on that point. He says there's nothing in the language of the statute. Section 1586A5 does that. It tells you that. It's the signal. And it ties in beautifully with the cases that go way, way back from this Court, that we will read exemption statutes in this way, that the proof of the constitutional exclusive use test is part of the applicant's prima facie case. You have to do that to be given the exemption. Ms. Oswald's counsel argues that the language forbids the Department from applying the constitutional test. If that's true, I would concede the statute's unconstitutional. Because in Chicago Bar Association, this Court said, if the General Assembly's intent is to lower that constitutional bar, the statute's fictionally constitutional. But that's not what this statute is doing. And the context of this statute makes that clear. I want to make one final point, if I can. To the extent that the Court is unconvinced that that word shall in 1586 should be a right of directory, there's at least tension between Section 1586C, the shall language, and the section that I'm talking about, 1586A-5. That tension creates ambiguity, and the Court uses a well-recognized tool of statutory construction when there's ambiguity in the doctrine of impar materia. Section 1586 is really a continuation of Section 1565. We know that Section 1565 is facially constitutional. The Court held that in Eden. And so in that regard, Section 1586 can be seen as an extension of a facially valid constitutional provision. Why, then, did the legislature create a new section? Your Honor, I think that's a fair question. I think the statute could be read as an extension of Section 1565. It would become a very long section, and it would involve a very big chunk about hospitals and small chunks about historical societies and others. I think it's just a question of organization. But there's no doubt that Section 1586 is tied back to Section 1565. The language calls back to the statute, and Section 1565 calls to the language of the Constitution. It all can be read reasonably so to be facially constitutional. So I would ask the Court to please affirm the Circuit Court's decision. Thank you. Thank you, Mr. Helitz. Mr. Baum. May it please the Court, Stephen Flom, on behalf of the Illinois Health and Hospital Association. Mr. Helitz, having focused on the first of the two separate and independent grounds for affirmance of the appellate court's ruling, namely the threshold statutory interpretation issue, unless the Court has other plans for me, my intent would be to focus on the second of those separate and independent grounds, the no set of circumstances test. But before doing so, I would like to take a moment or two to address two issues with respect to this threshold statutory interpretation issue. There is, in fact, a fundamental flaw in the plaintiff's interpretation of Section 1586. Contrary to what the plaintiff would suggest, Section 1586 does not suggest that exemptions shall be issued regardless of compliance with the Constitution. The plaintiff is asking the Court to add that additional language, that regardless of compliance with the Constitution language. That is not there. Now, everyone agrees that on this statutory interpretation issue, as always, it's fundamentally a question of legislative intent. And are we really to believe that the General Assembly expressly intended, intended to supersede an express constitutional provision of exclusive charitable use when they pass Section 1586 and when Section 1586 contains no such language? If all the prior statutes had this constitutional language, why did the legislature choose to eliminate it here? Well, first of all, Your Honor, not all the prior statutes had it. Section 1565 does have it. And there are statutes that didn't. So, for example, in the Presbyterian Theological Seminary case, the Court addressed the constitutionality of a statute that provided for exemptions for seminaries. And even though that statute did not expressly include the exclusive use for school purposes, this Court held that it should be interpreted that way, along with the Constitution. The Chicago Bar Association case is another example. The relevant portion of the statute that was at issue in the CBA case simply said there was the first part of the statute did use the constitutional language, and it gave some examples. And then it went on to say also included, meaning also exempt is, and then there's a bunch of things, including the provision that the CBA relied on, that provision did not incorporate the constitutional language. And that's really not surprising because since when do statutes have to expressly acknowledge constitutional limitations? We pass penal statutes all the time that don't acknowledge, provided that the punishment is not cruel and unusual. Even in the tax context, we don't specifically say this tax applies so long as it's uniform. Property tax exemptions are no different. There's precedent that shows that. Sure, the Court could have said that, but it wasn't required. Excuse me, the legislature could have said it, but it wasn't required to say that. And so really the question then on this threshold interpretation issue comes down to how are we going to read this when it doesn't specifically say one thing or the Are we going to do what the plaintiff says and imply an intent to violate the Constitution? When this Court has consistently said we apply just the opposite, we infer, we assume the opposite, we assume that the legislature is intending to comply with the Constitution. Or alternatively, are we going to do what this Court has suggested time and again, that is, and in this particular instance, are we going to infer an intent to comply with the Constitution, especially in light, as Mr. Illiots noted, of the express findings in Section 1586A5 that allude to the decisions of this Court in Provena and in Eden, decisions that expressly acknowledge the General Assembly can address and can always subject to the Constitution. The General Assembly knew exactly what it was doing when it passed Section 1586. It was well aware that whatever statutory ownership criteria, and it expressly again distinguished between the statutory ownership issue, and we know that there is a constitutional use issue, they knew how to distinguish, they were distinguishing, and they were wholly addressing in the statute the statutory ownership issue. Can you explain to me the question that I asked the Attorney General, Assistant Attorney General, how this is supposed to work? If we apply the overlay approach, won't the constitutional test of exclusive use cancel out any compliance with statutory text? Statutory text is about outreach and community and outside the four walls of the hospital. Exclusive use test is about the use of the actual property at issue. That's correct. And so they're complementary. It's supplementary, as Mr. Elett said. And I think it would be helpful for the Court to know and understand, what do these applications look like? And when you submit a PTACS 300H application, it's not just one or two sheets of paper. They're like this. And the form requires a great deal of additional documentation, including documentation that goes to the use of the property. So, for example, as you will see in question 21 of the PTACS form, the form specifically asks about leases. How are we using the property? Are we leasing it to somebody else? Is that for an exempt purpose? Information is provided. Does it discuss, does anything in the form request information that would lead to an answer of whether or not there's an exclusive use for charitable purposes? The short answer is yes, that the Department of Revenue gets that information and typically it is provided, Your Honor, in an affidavit of use that specifically addresses the use of the property. In addition, the form itself expressly requires that an applicant submit the AGCBP-1 report, the Attorney General's Community Benefit Plan report that most of our hospitals in our state are required to submit. It also expresses that. Okay, so that's by the community benefit. But what about the use of the actual parcel? Where is that document? That document comes in the affidavit of use and it comes in any leases or other contracts relating to the use of the property that are specifically required. And, Your Honor, when the. . . So just so I understand. So a hospital has wonderful outreach programs, works in the community, does lots of educational programs, lots of clinics, and then the piece of property that they use here is an issue in terms of the exemption. That's a completely full-pay, for-profit entity. Because it does these other kinds of community outreach, therefore that property is exempt? Is that what you're saying? No, Your Honor. The statutory ownership criteria might be satisfied in that situation, but the constitutional requirement would not be satisfied unless the property is used exclusively for charitable purposes. And, indeed, I'm aware of at least one instance, and I believe there are others, in which the Department of Revenue, on the basis of information that it receives, pursuant to the PTEX 300-H, the Community Benefit Report, the IRS Form 990-H, which provides a wealth of information about what's the charity care program, what is the financial information is provided. A great wealth of information is provided. And in at least one instance, the Department of Revenue, despite the satisfaction of the ownership criteria, denied an application because it wasn't being used exclusively for charitable purposes. So the statute is designed to work in a way where the ownership criteria supplement the constitutional work criteria. The Department of Revenue is properly implementing it. They get that information. They act on the information. And I'd like to, if I can, I hope I've answered your question, Justice Fentz. I'd like to just say a few words very quickly about the dose-set-of-circumstances test, which is a separate and independent grounds for affirmance. And it is clear that if there is a situation in which the property could receive an exemption under 1586 and satisfy the Constitution, that is a separate ground for affirming, for finding the statute to be facially constitutional. In the lower court, as Mr. Flaxman acknowledged in response to Justice Thomas' question, they acknowledge, yeah, it is possible. Now, they've asserted here, well, basically it's far-fetched. It is not at all far-fetched that an Illinois hospital can use its property exclusively for charitable purposes within the meaning of Article IX, Section 6 of the Constitution. That's been clear for more than 100 years since the Sisters of the Third Order case in 1907. It's been repeatedly established by this court and by the appellate court. The most recent decision by this court being the Streeterville Corporation case, where this court held that property used as a parking garage by Northwestern Memorial Hospital was being used exclusively for charitable purposes, to the extent that it was used by the hospital patients and employees. So it's not far-fetched to conclude that it is possible for property to both satisfy the statutory ownership criteria and the constitutional charitable use requirement. That's a separate ground for affirmance. And so for both of those grounds, I'd urge the court to affirm the appellate court's ruling and uphold the facial constitutionality of Section 1586. Thank you. Thank you. Commissioner Little. Ken Flaxman again for the plaintiff. I wanted to address Mr. Flaxman. We've heard from everyone here that the Constitution must still be complied with and the statute cannot be applied to the exclusion of the constitutional requirement. It seems to be that's what everybody seems to agree. Why wouldn't this case just be decided similar to what was said in Chicago Bar Association? Because there's no hook in this statute that would signal that the constitutional criteria can be applied. The wording in this statute, the actual text, is absolute. And there was argument and discussion about 1586 subsection A5, and that is a preamble to the statute. And the wording that the court was directed to is not the entirety of the wording. And what that preamble also says is it is also the intent of the General Assembly to establish quantifiable standards for the issuance of charitable exemptions for such property. And then it goes on to say it should be established on a case-by-case basis. When you look at that language about quantifiable standards. So we can't apply what was said in Chicago Bar Association, that tax exemptions are considered, quote, illustrative and descriptive of circumstances where exemptions are warranted, provided that the applicable constitutional requirements are satisfied. That would not apply here? That's our position, and it's because the word that would enable the court to utilize that construction tool is missing from this statute. I wanted to address the attempt by the defendants to connect 1565 to 1586. And the first point there is there is nothing in the text or language of 1586 that would suggest any such connection. In fact, Section 1586 sub I of the statute seems to read that this particular provision stands entirely by itself. On the no set of circumstances test, we think the best indication of legislative intent is the words used in the statute itself. And the words used in this statute are inescapably constitutionally defective. We're not implying any bad intent by the legislature. No one says they did this on purpose. The words are what they are, and the statute says what it says. Council for the Hospital Association talked about the application process and the contents of the application. I just want to caution the court because none of the things council is discussing are actually in the record before the trial court. The only piece of evidence about the application before the trial court was the PTAC 300H form. I filed a motion under Supreme Court Rule 191B to seek additional discovery about the contents of the application and how it worked. Because I thought it might further develop the record. And it may have given rise to amending the complaint and adding an additional account for an as-applied challenge. That motion was denied. Counsel, you have urged us to read this section, this statutory section, basically in isolation independently. From 1565, yes. Aren't we required to consider statutes as a whole and to read provisions that have been added in a way that they will operate consistently within the statute? Yes. But we think it is a monumental leap in mental gymnastics to move from one section of a statute that operates by itself in a mechanical fashion to another unconnected provision in the same revenue statute. Simply so you can get a word or an interpretation aid that would enable the court to say that the constitutional exclusivity test should also be bootstrapped on the other statute. At some point, we use too many construction tools and have to go so far outside of the penumbra that it no longer makes sense and is just not a reasonable construction. So for these reasons, I would ask that the court reverse the appellate court and remand to find that the Section 1586 is constitutionally defective. Alternatively, based on the discussion of the additional evidence that was not developed in the record, I would alternatively suggest a remand to further develop the record and potentially add an additional account covering the application contents and process and perhaps an additional as-applied challenge. Thank you, Your Honors. Thank you. Case number 122203, Oswald v. Beard, will be taken under advisement as agenda number 13. Mr. Firespin, Mr. Helitz, Mr. Plowman, we thank you for your arguments this morning. You are excused for their facts.